| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| Annie Verdries, SBN 91049<br>Lewis Brisbois Bisgaard & Smith, LLP<br>650 Town Center Drive, Suite 1400<br>Costa Mesa, CA 92626<br>E-Mail: verdries@lbbslaw.com<br>Telephone No.: 714-545-1800<br>Facsimile No.: 714-850-1030<br><br>*Attorney for* HEIDE KURTZ CHAPTER 7 TRUSTEE | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA

| In re: RONALD O. ESCOBAR | CHAPTER 7 |
|---|---|
| | CASE NUMBER 2:09BK-19225-PC |
| | DATE: October 19, 2010 |
| | TIME: 9:30 a.m. |
| Debtor. | COURTROOM: 1539 |

## NOTICE OF MOTION FOR:

1) ORDER AUTHORIZING TRUSTEE TO SELL PROPERTY OF THE ESTATE; 2) FINDING PURCHASERS ARE GOOD FAITH PURCHASERS; AND 3) ORDER APPROVING OVERBID PROCEDURES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF HEIDE KURTZ AND ANDY CHANG

*(Specify name of Motion)*

1. TO: TO ALL PARTIES IN INTEREST:

2. NOTICE IS HEREBY GIVEN that on the following date and time and in the indicated courtroom, Movant in the above-captioned matter will move this Court for an Order granting the relief sought as set forth in the Motion and accompanying supporting documents served and filed herewith. Said Motion is based upon the grounds set forth in the attached Motion and accompanying documents.

3. **Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

---

**Hearing Date:** October 19, 2010   **Time:** 9:30 a.m.   **Courtroom:** 1539   **Floor:**

- [x] **255 East Temple Street, Los Angeles**
- [ ] **21041 Burbank Boulevard, Woodland Hills**
- [ ] **3420 Twelfth Street, Riverside**
- [ ] **411 West Fourth Street, Santa Ana**
- [ ] **1415 State Street, Santa Barbara**

---

4. **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to Local Bankruptcy Rule 9013-1. If you wish to oppose this Motion, you must file a written response with the Bankruptcy Court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than fourteen (14) days prior to the above hearing date. If you fail to file a written response to this Motion within such time period, the Court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

5. **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according to the Judge's self-calendaring procedures.

Dated: September 22, 2010

Lewis Brisbois Bisgaard & Smith, LLP
*Law Firm Name*

By: _____

Name: Annie Verdries, SBN 91049
*Attorney for Movant*

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-1.1**

F901311

1   ANNIE VERDRIES, SB# 91049
    E-Mail: verdries@lbbslaw.com
2   **LEWIS BRISBOIS BISGAARD & SMITH** LLP
    650 Town Center Drive, Suite 1400
3   Costa Mesa, California 92626
    Telephone: (714) 545-9200
4   Facsimile: (714) 850-1030

5   Attorneys for Proposed Counsel for Heide Kurtz
    Chapter 7 Trustee

6

7

8                   UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10              LOS ANGELES DIVISION DIVISION

11

12  In re:                                    ) CASE NO. 2:09bk-19225-PC
                               )
13  RONALD ESCOBAR,                           ) Chapter 7
                               )
14                             ) **MOTION FOR ORDER AUTHORIZING**
                           ) **CHAPTER 7 TRUSTEE TO:**
15            Debtor,                         )
                           ) **1) SELL PROPERTY OF THE ESTATE;**
16  _____ )
17                                   **2) FINDING PURCHASERS ARE GOOD
                                   FAITH PURCHASERS**

18                                   **3) FOR ORDER APPROVING OVERBID
                                 PROCEDURES**
19

20                                 MEMORANDUM OF POINTS AND
                               AUTHORITIES; DECLARATIONS OF HEIDE
21                                 KURTZ AND ANDY CHANG

22                                 (Property located at 9032 W. Western Ave, Los
                               Angeles)
23                                 Date:     October 19, 2010
24                                 Time:     9:30 a.m.
                               Ctrm:     1539
25  PLEASE TAKE NOTICE that on October 19, 2010 at 9:30 a.m. in courtroom 1539 of the United

26  States Bankruptcy Court located at 255 East Temple Street, Los Angeles, California, a hearing will

27  be held on the Chapter 7 Trustee's Motion For Order Authorizing Trustee to (1) Sell Property of the

28  ///

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

1 | Estate (2) Finding Purchasers are Good Faith Purchasers and (3) for Order Approving Overbid

2 | Procedures.

3 |     This Motion (the "Motion") will be based on this Motion, the supporting Declarations of

4 | Heide Kurtz and Andy Chang, the pleadings and records on file herein, and any evidence properly

5 | before the Court and the arguments of counsel.

6 | **MEMORANDUM OF POINTS AND AUTHORITIES**

7 | **I.**

8 | **INTRODUCTION**

9 |     The instant case was commenced by the filing of a Voluntary Chapter 7 Petition by Ronald O.

10 | Escobar ("Debtor") on April 21, 2009.

11 | **The Real Property**

12 |     Debtor on Schedule A has list a fee interest in certain real property ("Property"). The Property

13 | is located at 9632 W. Western Ave., Los Angeles, CA 90047. The Property consist of an eight (8) unit

14 | apartment building, type C.

15 |     Debtor has listed the value as $540,000, with encumbrances of $680,000.00

16 | **The Purchase Offer**

17 |     The trustee has received an offer to purchase the Property for $35,000, subject to all

18 | encumbrances and as is, where is, without any warranty or guaranty.

19 | There are no loan contingencies.

20 |     The estate's interest in the property is being sold as is and where is without any guaranty or

21 | warranty, subject to liens and encumbrances of record.

22 | The proposed purchaser is Arcadia Land Corp., LLC.

23 |     This transaction has been negotiated and consummated in good faith and on an arms length

24 | basis. It confers no special treatment on any of Debtors' insiders.

25 |     Notice of this Motion to Sell has also been served on all creditors of the Debtor including those

26 | creditors who claim an interest in the property.

27 | ///

28 | ///

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

**Known Liens, Encumbrances**

Debtor claims the property is encumbered as follows:

      1.     A Deed of Trust in favor of USGI, Inc., with a balance of $680,000.

Trustee believes there may be outstanding real property taxes.

Trustee also has been informed that Greystone Bank ("Grey stone") has claimed to be the owner of the mortgage of the Property and filed two motions for relief from stay which Trustee believes were both withdrawn.

Trustee is also informed and believes that Continental Assets Management, LLC ("Continental") claims to be the assignee of Greystone.

Continental filed a motion from relief from the automatic stay which was denied.

As discussed below, Trustee believes that all of the requirements to sell the Property have been met. The Court should therefore grant the Trustee's Motion and permit Trustee to sell the property to the proposed purchaser or to an overbidder.

**1.**    **Sound Business Justification**

The Ninth Circuit Bankruptcy Appellate Panel in *Walter v. Sunwest Bank (In re Walter)*, 83 Bankr. 14 (Bankr. 9th Cir. 1988) adopted a flexible, case by case test to determine whether the business purpose for the proposed sale justifies disposition of property of the estate under Section 363(b). In *Walter*, the Court adopted the reasoning of the Fifth Circuit in *Institutional Creditors of Continental Airlines, Inc., v. Continental Airlines (In re Continental Air Lines, Inc.)*, 780 F.2d 1223 (5th Cir. 1986), and the Second Circuit in *Committee of Equity Security Holders v. The Lionel Corporation (In re Lionel Corp.)*, 722 F.2d 1063 (2nd Cir. 1983) and articulated the criteria a bankruptcy court is to consider in deciding whether to approve or disapprove the use or sale of estate property under Section 363(b).

    Whether the proffered business justification is sufficient depends on the case. As the Second Circuit held in <u>Lionel</u>, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interest of the debtor, creditors and equity holders, alike. He might, for example, look to such relevant facts as the proportionate value of the asset to the estate to a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be

1    proposed and confirmed in the near future, the effect of the proposed disposition on

2    future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis

3    any appraisals of the property, which of the alternatives of use, sale or lease the proposal

4    envisions and, most importantly perhaps, whether the asset is increasing or decreasing

5    in value. The list is not intended to be exclusive, but merely to provide guidance to the

6    bankruptcy judge.

7    *Walter*, 83 Bankr. at 19-29, *quoting Continental Air Lines, Inc.*, 780 F.2d at 1226, citing *Lionel*, 722

8    F.2d at 1071.

9         All facts pertaining to the sale the Property amply justify and substantiate Trustee's business

10   decision that the contemplated sale of the Property to the proposed purchaser, is in the best interest of

11   the estate and should be approved by this Court. In particular, the proposed sale of the Property will

12   provide funds to the estate.

13        Trustee has, therefore, demonstrated that the sale of the Property is justified by sound business

14   purposes, satisfying the first requirement for a sale under Section 363(b).

15       **2.    Accurate and Reasonable Notice**

16        Bankruptcy Rule 2002(a) requires that "not less than 20 days notice by mail" be given for "a

17   proposed use, sale or lease of property of the estate other than in the ordinary course of business . . ."

18   Bankruptcy Rule 2002(c)(ii) requires the notice to "include the time and place of any public sale, the

19   terms and conditions of any private sale and the time fixed for filing objections." Notice of the

20   proposed sale has been given in accordance with these Bankruptcy Rules. Thus, Trustee has satisfied

21   the requirements for accurate and reasonable notice.

22       **3.    Fair and Reasonable Price**

23        For the purposes of Section 363(b), the requirement that a fair and reasonable price be obtained

24   for the Property has been defined as requiring a price equaling at least 75% of the fair market value of

25   the property. *See, e.g., In Re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 149 (3d Cir. 1986); *Willemain*

26   *v. Kivitz (In re Willemain)*, 764 F.2d 1019 (4th Cir. 1985); *In re Karpe,* 84 Bankr. 926 (Bankr. M.D. Pa.

27   1988).

28   ///

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

1    Debtor in his schedules valued the Property at $540,000, with encumbrances of $680,000.

2    Trustee is selling the Property subject to all liens and encumbrances for $35,000. Trustee is therefore

3    receiving a fair and reasonable price.

4    **4.    Good Faith**

5    The good faith requirement "focuses principally on the element of special treatment of the

6    debtor's insiders in the sale transaction." *In re Industrial Valley Refrig. and Air Cond. Supplies, Inc.*,

7    77 Bankr. at 17. The sale has been negotiated on an arms-length basis and confers no special treatment

8    on any of Debtors' insiders.

9    In view of the compelling business reasons for the sale of the Property, and the sale's satisfaction

10   of the procedural and substantive requirements of Section 363(b), Trustee submits that the Court should

11   approve the sale proposed pursuant to Section 363(b) of the Bankruptcy Code.

12   The purchaser may be related to or involved with Continental. Continental claims to be the

13   current holder of the deed of trust on the property. Debtor has denied that Continental is the deed of

14   trust holder.

15   **5.    The Court Should Find That The Buyer Is A Good Faith Purchaser**

16   **Within The Meaning Of 11 U.S.C. §363(m)**

17   11 U.S.C. §363(m) authorizes the Court to make a finding that a buyer is a good faith purchaser.

18   A purchaser of property is protected from the effects of reversal on appeal of the authorization to sell

19   or lease as long as the Court finds that the purchaser acted in good faith and the appellant fails to obtain

20   a stay of the sale. See 11 U.S.C. §363(m). Although the Bankruptcy Code does not define "good faith,"

21   courts have provided guidance as to the appropriate factors to consider. See *In re Pine Coast*

22   *Enterprise, Ltd.*, 147 B.R. 30, 33 (Bankr. N.D. Ill. 1992) ("The requirement that a purchaser act in good

23   faith speaks to the integrity of its conduct in the course of the sale proceeding"); *Kham and Nate's Shoes*

24   *No. 2 v. First Bank*, 908 F.2d 1351, 1355 (7th Cir. 1990) ("The purpose of §363(m) is to disable courts

25   from backtracking on promises with respect to bankruptcy sales in the absence of bad faith"). The

26   Trustee requests that the Court make a finding that the Buyer is a good faith purchaser of the Subject

27   Property within the meaning of 11 U.S.C. §363(m).

28   ///

1    As set forth in the Declarations attached hereto, the protection of Section 363(m) of the

2    bankruptcy code is appropriate in this case because the proposed sale transaction is the product of arms-

3    length, good faith negotiations between the trustee and the bankruptcy estate on the one hand, and the

4    purchaser on the other.

5                                                                III.

6    **OVERBIDDERS ARE WELCOME AT THE HEARING TO APPROVE THE SALE**

7    As always, other potential purchasers may submit overbids at or before the hearing to approve

8    the sale. Accordingly, the Trustee requests that the court adopt certain overbid procedures.

9    **Any party wishing to submit an overbid should appear at the hearing on this motion on**

10   **October 14, 2010 at 9:30 a.m. in courtroom 1539 before the Honorable Peter Carroll.** Each

11   overbidder shall bring to court at the time of the hearing in certified funds a deposit in the amount of

12   $5,000 plus the amount of the overbid. (For example, if the initial overbid is $38,000, a deposit of

13   $5,000 plus $3,000 is required.) The deposit must be payable to Heide Kurtz, Chapter 7 Trustee. The

14   deposit from the successful overbidder will become non-refundable upon conclusion of the hearing.

15   The buyer must complete the purchase of the Property within 15 days of the entry of the Order

16   confirming the sale and the successful overbidder must pay the balance of the full amount of the

17   successful overbid to the Trustee upon the entry of the Order confirming the sale. The deposit of each

18   non-successful bidder will be returned immediately. In the event the successful overbidder cannot

19   consummate the transaction timely, the Trustee shall be authorized to accept the offer made by the next

20   highest bidder.

21   The first overbid for the Property should be for at least $37,000.00 and subsequent overbids

22   should be in increments of a least $1,000. Finally, the overbidder must agree (and so state on the

23   record) to execute a purchase agreement in a form satisfactory to the Trustee and substantially identical

24   to the Purchase Agreement attached hereto as Exhibit "A."

25   ///

26   ///

27   ///

28   ///

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

## IV.

### THE COURT SHOULD WAIVE THE PROVISIONS OF RULE 6004 (g)

### AND AUTHORIZE AN IMMEDIATE SALE

Finally, the Trustee requests that the court waive the ten day stay imposed by Rule 6004 (g) of the Federal Rules of Bankruptcy Procedure. The parties wish to complete the sale as quickly as possible and, therefore, the Trustee requests permission to proceed immediately with the sale.

Trustee is informed and believes that certain repairs are required immediately and that the prospective purchaser wants to make certain repairs as soon as possible.

## VII.

### CONCLUSION

For the reasons set forth above, the Trustee respectfully requests the Court entered an order (1) approving the proposed sale of the Property to Arcadia Land Corp., LLC. or the highest overbidder, if any, (2) finding that the proposed purchase is a good faith purchaser, and (3) approving the proposed overbid procedures.

DATED: September 20, 2010            LEWIS BRISBOIS BISGAARD & SMITH LLP


By
Annie Verdries
Proposed Counsel for Heide Kurtz,
Chapter 7 Trustee

1    ## DECLARATION OF HEIDE KURTZ

2

3    I, Heide Kurtz hereby declare as follows:

4    The following is in my personal knowledge and if called as a witness, I would and could

5    competently testify thereto.

6    The instant case was commenced by the filing of a Voluntary Chapter 7 Petition by Ronald

7    O. Escobar ("Debtor") on April 21, 2009.

8    I am the duly appointed Chapter 7 Trustee in this case.

9    **The Real Property**

10    Debtor on Schedule A list a fee interest in certain real property ("Property"). The Property

11    is located at 9632 W. Western Ave., Los Angeles, CA 90047. The Property consist of an eight (8)

12    unit apartment building, type C.

13    Debtor has listed the value as $540,000, with encumbrances of $680,000.00

14    True and correct copies of Debtor's Schedules A and D are attached hereto as Exhibit "A."

15    **The Purchase Offer**

16    The trustee has received an offer to purchase the Property for $35,000, subject to all

17    encumbrances and as is, where is, without any warranty or guaranty. A true and correct copy of the

18    Agreement of Purchase and Sale is attached hereto as Exhibit "B."

19    There are no loan contingencies.

20    The proposed purchaser is Arcadia Land Corp., LLC.

21    This transaction has been negotiated and consummated in good faith and on an arms length

22    basis with the assistance of counsel for both parties. It confers no special treatment to any of

23    Debtor's insiders.

24    **Known Liens, Encumbrances**

25    Debtor claims the property is encumbered as follows:

26    1.    A Deed of Trust in favor of USGI, Inc., with a balance of $680,000.

27    I believe there may be outstanding real property taxes.

28    I also have been informed that Greystone Bank ("Grey stone") has claimed to be the owner

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

4818-7366-5031.1                                    -8-

1   of the mortgage of the Property and filed two motions for relief from stay which I believe were both

2   withdrawn.

3         I am also informed and believes that Continental Assets Management, LLC ("Continental")

4   claims to be the assignee of Greystone.

5         Continental filed a motion from relief from the automatic stay which was denied.

6         The bankruptcy estate is selling the Property subject to all liens and encumbrances for

7   $35,000.  The bankruptcy estate is therefore receiving a fair and reasonable price.

8         I declare under penalty of perjury under the laws of the United States of America that the

9   foregoing is true and correct.

10        Executed on September 22, 2010 at San Pedro, California.

11

12  HEIDE KURTZ

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

### DECLARATION OF ANDY CHANG

1

2      I, Andy Chang, declare:

3      1.      I am the manager of Arcadia Land Corp., LLC ("Arcadia"), the proposed buyer of

4      the right, title and interest of the bankruptcy estate of Ronald O. Escobar in and to that real property

5      located at 9632 S. Western Avenue, Los Angeles, California 90047 (the "Property"). I am also the

6      manager of Continental Assets Management, LLC ("Continental"), the holder of the first priority

7      deed of trust against the Property. All facts stated herein are known by me to be true through my

8      own personal knowledge and I would and could competently testify thereto in a court of law if

9      called upon to do so.

10     2.      Arcadia has no interest in debtor Ronald O. Escobar ("Debtor"). Debtor has no

11     interest, whether direct or indirect, in Arcadia. Arcadia is not an insider or affiliate of Debtor.

12     3.      Arcadia has no interest, whether direct or indirect, in Continental. Continental has

13     no interest, whether direct or indirect, in Arcadia. Arcadia and Continental are completely separate

14     and different entities and business.

15     4.      Arcadia has not made any promises to Debtor or Heide Kurtz, Chapter 7 Trustee (the

16     "Trustee") concerning Arcadia's purchase of the Property (or any other matter) which are not

17     contained in the "Agreement of Purchase and Sale" (the "Agreement") executed by the Trustee and

18     Arcadia.

19     5.      The negotiations between Arcadia and the Trustee regarding the Trustee's proposed

20     sale of the Property were at arms-length, fair and no collusion was involved. The Agreement was

21     jointly prepared by counsel for the Trustee and counsel for Arcadia after a series of negotiations.

22     ///

23     ///

24     ///

25     ///

26     ///

27     ///

28     ///

1      6.    Arcadia disclosed to the Trustee all information requested by the Trustee concerning

2   Arcadia and its connections, which are disclosed herein, to both Debtor and Continental.

3      Executed on September 20, 2010 at Arcadia, California.

4      I declare under the penalty of perjury under the laws of the United States of America that the

5   foregoing is true and correct.

6

7

8

9                       ANDY CHANG

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PRINTED ON
RECYCLED PAPER

7291888v1

**EXHIBIT "A"**

B6A (Official Form 6A) (12/07)

In re    **Ronald O Escobar**                                                     Case No._____
_____
                           Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **4925 Berryman Ave Culver City CA 90230 Single Family Residence. 2 Bedrooms, 1 bath 840 Sqft** | **Fee simple** | **H** | **475,000.00** | **869,800.00** |
| **9632 S Western Ave. Los Angeles CA 90047 8 Unit Apt building. Type C, Unit Mix is 6 one-bdrm and 2 two-bdrm. All units have 1 bathroom.** | **Fee simple** | **H** | **540,000.00** | **680,000.00** |

|  |  |  |
|---|---|---|
| Sub-Total > | 1,015,000.00 | (Total of this page) |
| Total > | 1,015,000.00 | |

__0__   continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                        Best Case Bankruptcy

EXH___A___PG 12

B6D (Official Form 6D) (12/07)

In re    Ronald O Escobar                                                Case No._____
_____
                    Debtor

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W | J C | | | | | | |
| Account No. xxxx7132 | | | | | 5/13/2007 | | | | | |
| | | | | | Second Mortgage | | | | | |
| Countrywide Home Lending Attention: Bankruptcy  SV-314B Po Box 5170 Simi Valley, CA 93062 | X | | | - | 4925 Berryman Ave Culver City CA 90230 Single Family Residence. 2 Bedrooms, 1 bath 840 Sqft | | | | | |
| | | | | | Value $          475,000.00 | | | | 65,800.00 | 65,800.00 |
| Account No. xxxxx7193 | | | | | 5/13/2007 | | | | | |
| | | | | | First Mortgage | | | | | |
| GMAC PO Box 2159 Greeley, CO 80632 | X | | | - | 4925 Berryman Ave Culver City CA 90230 Single Family Residence. 2 Bedrooms, 1 bath 840 Sqft | | | | | |
| | | | | | Value $          475,000.00 | | | | 550,000.00 | 75,000.00 |
| Account No. | | | | | 02/01/2009 | | | | | |
| | | | | | Commercial Lease Deposit | | | | | |
| Marina Piazza LLC c/o Barry S Parker Esq. 10880 Wilshire Blvd. #1050 Los Angeles, CA 90024 | | H | | | Security Deposit with Marina Piazza LLC for office rental space | | | | | |
| | | | | | Value $          2,400.00 | | | | 2,400.00 | 0.00 |
| Account No. xx0244 | | | | | 2/29/2008 | | | | | |
| | | | | | First Mortgage | | | | | |
| USGI Inc 9375 Chesapeak St STE 215 La Plata, MD 20646 | | H | | | 9632 S Western Ave. Los Angeles CA 90047 8 Unit Apt building. Type C, Unit Mix is 6 one-bdrm and 2 two-bdrm.  All units have 1 bathroom. | | | | | |
| | | | | | Value $          540,000.00 | | | | 680,000.00 | 140,000.00 |

|  |  |  |
|---|---|---|
| __1__   continuation sheets attached | Subtotal (Total of this page) | 1,298,200.00 | 280,800.00 |

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                                Best Case Bankruptcy

EXH ___A___  PG. ___13___

B6D (Official Form 6D) (12/07) – Cont.

In re   **Ronald O Escobar**                                          Case No._____
_____
Debtor

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. xxxxxx4740<br><br>Washington Mutual Mortgage<br>Attn: Bankruptcy Dept. JAXA 2035<br>7255 Bay Meadows Way<br>Jacksonville, FL 32256 | | H | 3/7/2008<br>Third Mortgage<br>4925 Berryman Ave<br>Culver City CA 90230<br>Single Family Residence. 2 Bedrooms, 1 bath 840 Sqft | | | | | |
| | | | Value $          475,000.00 | | | | 254,000.00 | 254,000.00 |
| Account No. xxxxx495-1<br><br>Water & Power Comm Cu<br>1053 W Sunset Blvd<br>Los Angeles, CA 90012 | | | 5/9/2008<br>Vehicle Loan<br>2005 Honda Civic Hybrid Sedan<br>102,000 miles | | | | | |
| | | | Value $          8,000.00 | | | | 14,591.00 | 6,591.00 |
| Account No. | | | | | | | | |
| | | | Value $ | | | | | |
| Account No. | | | | | | | | |
| | | | Value $ | | | | | |
| Account No. | | | | | | | | |
| | | | Value $ | | | | | |

Sheet  1   of  1    continuation sheets attached to
Schedule of Creditors Holding Secured Claims

| | | |
|---|---|---|
| Subtotal<br>(Total of this page) | 268,591.00 | 260,591.00 |
| Total<br>(Report on Summary of Schedules) | 1,566,791.00 | 541,391.00 |

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

EXH___A___ PG___14___

**EXHIBIT "B"**

## AGREEMENT OF PURCHASE AND SALE

This Agreement of Purchase and Sale (the "Agreement") is executed as of the _14_ day of September, 2010 (the "Effective Date") by and between Heide Kurtz acting solely in her capacity as the Chapter 7 Trustee for the estate of the debtor Ronald O. Escobar ("**Seller**"), and Arcadia Land Corp., LLC, a California limited liability company ("**Buyer**").

### RECITALS

Seller is the Trustee in a case entitled In re Ronald O. Escobar ("Debtor") filed under and pursuant to Chapter 7 of the United States Bankruptcy Code of 1978, as amended (11 U.S.C. §§101, et seq.) (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Central District of California (the "Court"), Case No. 2:09:BK-19225-PCSB (the "Case"). This Agreement concerns real property known as 9632 S. Western Avenue, Los Angeles, California 90047, more particularly described as Lot 33 of Tract 6084, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 101, Pages 53-57, in the office of the Los Angeles County Recorder (the "Land"). Any agreement (including this Agreement) entered into by the Seller in the Case for the sale of the Property (as hereinafter defined), and any sale of the Property pursuant to any such agreement, is subject to the entry of an order by the Court approving such agreement and sale and authorizing Seller to consummate such sale and further providing that Buyer is a "good faith purchaser" of all rights and interests under Section 363(mM) of the Bankruptcy Code (the "Approval Order").

Buyer and/or certain of its members are affiliated with the holder of a deed of trust or related to the holder of a deed of trust which is a lien against the Property (as hereinafter defined). Buyer desires to acquire the Property subject to all encumbrances on title and subject to its "AS IS" condition.

C.      Subject to the entry of the Approval Order, the Seller desires to sell the Property (as hereinafter defined) to the Buyer and the Buyer desires to purchase the Property from the Seller subject to and in accordance with the terms, conditions and provisions of this Agreement.

### AGREEMENT

NOW, THEREFORE, IN CONSIDERATION OF the foregoing Recitals, and in consideration of the mutual promises of the parties as hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

### ARTICLE I

### PURCHASE AND SALE OF PROPERTY

**Section 1. Sale.**

The Recitals are incorporated into this Agreement as though herein fully and completely rewritten. Seller agrees to sell to Buyer, and Buyer agrees to purchase from Seller, subject to the terms, conditions and provisions set forth herein, all of Seller's right, title and interest in and to

the Land and the following property (collectively, the "Property"):

(a)   **Real Property.**   That "Land", together with and including (1) all improvements located thereon including, without limitation, an 8-unit apartment building (the "Improvements"), and (2) all rights, benefits, privileges, easements, tenements, hereditaments, rights-of-way and other appurtenances thereon or in any way appertaining thereto (collectively, the "Real Property");

(b)   **Fixtures.**   All of the fixtures, plumbing systems, electrical systems, security systems, fire prevention systems, heating/ventilation/air-conditioning systems, and other permanently affixed property, if any, owned by Seller and now located on and used in the operation, ownership or maintenance of the Real Property (collectively, the "Fixtures"); and

(c)   **Personal Property.**   Any right, title and interest of the bankruptcy estate in and toAll "Personal Property", owned by Seller and now located on and used in the operation of the Improvements and/or the Land.

Section 1. Purchase Price.

(a)   The purchase price of the Property is **Thirty Five Thousand Dollars ($35,000.00)** (the "Purchase Price").   The Property shall be sold subject to all existing monetary liens against the Property.

(b)   The Purchase Price shall be paid as follows:

(1) Upon execution and delivery of this Agreement by both parties, Buyer shall pay Seller the sum of $5,000 (the "Deposit").

(2) Upon issuance of the Approval Order, Buyer shall deliver the balance of the Purchase Price to Seller, and Seller shall deliver the Deed (as attached hereto as Exhibit "A") to Buyer in executed and notarized form.


IF THE SALE OF THE PROPERTY IS NOT CONSUMMATED DUE TO SELLER'S DEFAULT HEREUNDER, THEN BUYER MAY ELECT, AS BUYER'S SOLE AND EXCLUSIVE REMEDY, TO   RECOVER THE DEPOSIT AND TERMINATE THIS AGREEMENT IN WHICH EVENT NEITHER PARTY SHALL HAVE ANY FURTHER RIGHTS OR OBLIGATIONS HEREUNDER EXCEPT AS PROVIDED IN SECTIONS 6.1 AND 9.3 BELOW. BUYER SHALL NOT HAVE ANY OTHER RIGHTS OR REMEDIES HEREUNDER AS A RESULT OF ANY DEFAULT BY SELLER PRIOR TO CLOSING, AND BUYER HEREBY WAIVES ANY OTHER SUCH REMEDY AS A RESULT OF A DEFAULT HEREUNDER BY SELLER. IF THE SALE IS NOT CONSUMMATED DUE TO ANY DEFAULT BY BUYER HEREUNDER, THEN SELLER SHALL   RETAIN THE DEPOSIT AS LIQUIDATED DAMAGES AND TERMINATE THIS AGREEMENT WHEREUPON NEITHER PARTY SHALL HAVE ANY FURTHER RIGHTS OR OBLIGATIONS HEREUNDER EXCEPT AS PROVIDED

COUNSEL WHO EXPLAINED, AT THE TIME THIS AGREEMENT WAS MADE, THE CONSEQUENCES OF THIS LIQUIDATED DAMAGES PROVISION. THE FOREGOING IS NOT INTENDED TO LIMIT BUYER'S OBLIGATIONS UNDER SECTIONS 6.1 AND 9.3.

INITIALS:        SELLER _____        BUYER _____

IN SECTIONS 6.1 AND 9.3 BELOW. BY PLACING THEIR INITIALS BELOW, EACH PARTY SPECIFICALLY CONFIRMS THE ACCURACY OF THE STATEMENTS MADE ABOVE AND THE FACT THAT EACH PARTY WAS REPRESENTED BY COUNSEL WHO EXPLAINED, AT THE TIME THIS AGREEMENT WAS MADE, THE CONSEQUENCES OF THIS LIQUIDATED DAMAGES PROVISION. THE FOREGOING IS NOT INTENDED TO LIMIT BUYER'S OBLIGATIONS UNDER SECTIONS 6.1 AND 9.3.

INITIALS:          SELLER _____          BUYER _____

## ARTICLE II

### SALE CONDITION WITHOUT INSPECTIONS

**Section 2. Buyer Does Not Require Inspection.**

Seller has not provided and shall not provide Buyer and its consultants and other agents and representatives with access to the Property to perform inspections and review and determine the present condition of the Property. Seller does not have physical possession of the Property, nor does Seller have keys to the Property. Buyer hereby notifies Seller that Buyer has knowledge regarding the title to the Property, the condition of the Property, and all other matters Buyer deems relevant thereto.

## ARTICLE III

### BUYER'S EXAMINATION

**Section 3. Representations and Warranties of Seller.**

Subject to any matters of public record where the Property is located or matters disclosed by Buyer's due diligence investigations, Seller hereby makes the following representations and warranties with respect to the Property:

**(a)    Seller is the duly appointed Chapter 7 Trustee in the Case, the Property is property of the estate of the Debtor in the Case, and this Agreement and the Closing of the transaction contemplated hereby and execution and delivery of the Deed (as hereinafter defined) by Seller are all subject to the entry of the Approval Order by the Court.**

**(b)    Seller is not a "foreign person" as defined in Section 1445 of the Internal Revenue Code of 1986, as amended (the "Code") and any related regulations.**

**(c)    Seller has never possessed or even visited the Property, and Seller has no knowledge regarding the condition of the Property.**

**(d)    Seller has not sold, leased, mortgaged, hypothecated or otherwise transferred all or any interest in the Property, nor has Seller entered into any contract of agreement to sell, lease, mortgage, hypothecate or otherwise transfer all or any interest in the Property.**

Each of the representations and warranties of Seller contained in this Section 3.1 shall be true in all material respects as of the date of Closing except for matters disclosed to Buyer prior to Closing.

**Section 3. Survival of Seller's Representations and Warranties of Sale.**

The representations and warranties of Seller contained herein shall not survive the Closing. Any claim which Buyer may have against Seller for a breach of any such representation or warranty, whether such breach is known or unknown, which is not specifically asserted by written notice to Seller prior to Closing shall not be valid or effective, and Seller shall have no liability with respect thereto.

**Section 3.3Representations and Warranties of Buyer.**

Buyer represents and warrants to Seller as follows:

**(a)** This Agreement and all documents executed by Buyer which are to be delivered to Seller at Closing do not and at the time of Closing will not violate any provision of any agreement or judicial order to which Buyer is a party or to which Buyer is subject.

**(b)** Buyer has not (i) made a general assignment for the benefit of creditors, (ii) filed any voluntary petition in bankruptcy or suffered the filing of any involuntary petition by Buyer's creditors, (iii) suffered the appointment of a receiver to take possession of all, or substantially all, of Buyer's assets, (iv) suffered the attachment or other judicial seizure of all, or substantially all, of Buyer's assets, (v) admitted in writing its inability to pay its debts as they come due, or (vi) made an offer of settlement, extension or composition to its creditors generally.

**(c)** If Buyer is a business organization, Buyer has been duly organized, is validly existing and is in good standing in the state in which it was formed, and, if required to do so, is qualified to do business in the state in which the Real Property is located. This Agreement has been, and all documents executed by Buyer which are to be delivered to Seller at Closing will be, duly authorized, executed and delivered by Buyer.

**(d)** Buyer has had no contact with any broker or finder with respect to the Property.

**(e)** Buyer acknowledges and agrees that any performance or obligation of Seller relating to execution and delivery of this Agreement and the Deed, or with regard to the consummation of the transaction contemplated hereby, are all subject to the prior entry of the authorizing Approval Order on or before October 27_____, 2010 (the "Deadline"). Buyer further acknowledges and agrees that if any motion or application for the Approval Order is denied by the Court, then this Agreement shall automatically be terminated and the Deposit refunded to Buyer, whereupon neither party shall have any further rights or obligations hereunder except as provided in Sections 6.1 and 9.3 below.

**(f)** Buyer has present assets adequate to pay the Purchase Price and all costs and expenses of this transaction payable by Buyer, and Buyer's obligations under this Agreement are not contingent on Buyer obtaining financing for all or any part of the Purchase Price or such costs and expenses.

Each of the representations and warranties of Buyer contained in this Section shall be deemed remade by Buyer as of the Closing and shall survive the Closing for a period of six (6) months.

4830-7251-4311.14848-1916-8263.1848-1916-8263.1                 5

EXH___B___ PG. 20

Section 3. Buyer's Independent Investigation.

(a)  By Buyer entering into this Agreement, Buyer will be deemed to have acknowledged and agreed that it has investigated and inspected each and every aspect of the Property, either independently or through agents of Buyer's choosing, including, without limitation:

(1) All matters relating to title, together with all governmental and other legal requirements such as taxes, assessments, zoning, use permit requirements and building codes.

(2) The physical condition and aspects of the Property, including, without limitation, the interior, the exterior, the square footage within the improvements on the Real Property and within each tenant space therein, the structure, seismic aspects of the Property, the foundation, roof, paving, parking facilities, utilities, and all other physical and functional aspects of the Property.   Such examination of the physical condition of the Property shall include an examination for the presence or absence of Hazardous Materials, as defined below, which shall be performed or arranged by Buyer (subject to the provisions of Section 9.3 hereof) at Buyer's sole expense.  For purposes of this Agreement, "Hazardous Materials" shall mean inflammable explosives, radioactive materials, asbestos, asbestos–containing materials, polychlorinated biphenyls, lead, lead-based paint, radon, under and/or above ground tanks, hazardous materials, hazardous wastes, hazardous substances, petroleum and petroleum distillates, oil, or related materials, which are listed or regulated in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (42 U.S.C. Sections 6901, et seq.), the Resources Conservation and Recovery Act of 1976 (42 U.S.C. Section 6901, et seq.), the Clean Water Act (33 U.S.C. Section 1251, et seq.), the Safe Drinking Water Act (14 U.S.C. Section 1401, et seq.), the Hazardous Materials Transportation Act (49 U.S.C. Section 1801, et seq.), and the Toxic Substance Control Act (15 U.S.C. Section 2601, et seq.), the California Hazardous Waste Control Law (California Health and Safety Code Section 25100, et seq.), the Porter–Cologne Water Quality Control Act (California Water Code Section 13000, et seq.), and the Safe Drinking Water and Toxic Enforcement Act of 1986 (California Health and Safety Code Section 25249.5, et seq.) and any other applicable federal, state or local laws (collectively, "Environmental Laws").

(3) Any easements and/or access rights affecting the Property.

(4) The condition of all machinery, equipment and systems in or on the Property.

(5) All other matters of material significance affecting the Property.

EXCEPT FOR THE SELLER'S REPRESENTATIONS AS EXPRESSLY SET FORTH ABOVE, BUYER SPECIFICALLY ACKNOWLEDGES AND AGREES THAT SELLER IS SELLING AND BUYER IS PURCHASING THE PROPERTY ON AN "AS IS – WHERE IS - WITH ALL FAULTS" BASIS AND THAT BUYER IS NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR

IMPLIED, FROM SELLER, ANY SELLER RELATED PARTIES, OR THEIR AGENTS OR BROKERS. SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATIONS, WARRANTIES OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT, FUTURE OR OTHERWISE, OF, AS TO, CONCERNING OR WITH RESPECT TO THE FOLLOWING: (1) ENVIRONMENTAL MATTERS RELATING TO THE PROPERTY OR ANY PORTION THEREOF; (2) GEOLOGICAL CONDITIONS, INCLUDING, WITHOUT LIMITATION, SUBSIDENCE, SUBSURFACE CONDITIONS, WATER TABLE, UNDERGROUND WATER RESERVOIRS, LIMITATIONS REGARDING THE WITHDRAWAL OF WATER AND FAULTING; (3) WHETHER OR NOT AND TO THE EXTENT TO WHICH THE PROPERTY OR ANY PORTION THEREOF IS AFFECTED BY ANY STREAM (SURFACE OR UNDERGROUND), BODY OF WATER, FLOOD PRONE AREA, FLOOD PLAIN, FLOODWAY OR SPECIAL FLOOD HAZARD; (4) DRAINAGE; (5) SOIL CONDITIONS, INCLUDING THE EXISTENCE OF INSTABILITY, PAST SOIL REPAIRS, SOIL ADDITIONS OR CONDITIONS OF SOIL FILL, OR SUSCEPTIBILITY TO LANDSLIDES, OR THE SUFFICIENCY OF ANY UNDERSHORING; (6) USAGES OF ADJOINING PROPERTY; (7) THE VALUE, COMPLIANCE WITH THE PLANS AND SPECIFICATIONS, SIZE, LOCATION, AGE, USE, DESIGN, QUALITY, DESCRIPTION, DURABILITY, STRUCTURAL INTEGRITY, OPERATION, TITLE TO, OR PHYSICAL OR FINANCIAL CONDITION OF THE PROPERTY OR ANY PORTION THEREOF, OR ANY RIGHTS OR CLAIMS ON OR AFFECTING OR PERTAINING TO THE PROPERTY OR ANY PART THEREOF; (8) THE PRESENCE OF HAZARDOUS MATERIALS IN OR ON, UNDER OR IN THE VICINITY OF THE PROPERTY; (9) THE ACREAGE OF THE REAL PROPERTY; (10) IMPROVEMENTS AND INFRASTRUCTURE, IF ANY; (11) DEVELOPMENT RIGHTS AND EXTRACTIONS; (12) WATER OR WATER RIGHTS; (13) DRAINAGE; (14) THE CONDITION OR USE OF THE PROPERTY OR COMPLIANCE OF THE PROPERTY WITH ANY OR ALL PAST, PRESENT OR FUTURE FEDERAL, STATE OR LOCAL ORDINANCES, RULES, REGULATIONS OR LAWS, BUILDING, FIRE OR ZONING ORDINANCES, CODES OR OTHER SIMILAR LAWS; OR (15) THE MERCHANTABILITY OF THE PROPERTY OR FITNESS OF THE PROPERTY FOR ANY PARTICULAR PURPOSE (BUYER AFFIRMING THAT BUYER HAS NOT RELIED ON SELLER'S SKILL OR JUDGMENT TO SELECT OR FURNISH THE PROPERTY FOR ANY PARTICULAR PURPOSE, AND THAT SELLER MAKES NO WARRANTY THAT THE PROPERTY IS FIT FOR ANY PARTICULAR PURPOSE). BUYER ACKNOWLEDGES THAT IT HAS OR WILL COMPLETE ALL PHYSICAL AND FINANCIAL EXAMINATIONS RELATING TO THE ACQUISITION OF THE PROPERTY HEREUNDER AND WILL ACQUIRE THE SAME SOLELY ON THE BASIS OF SUCH EXAMINATIONS AND THE TITLE INSURANCE PROTECTION AFFORDED BY THE OWNER'S POLICY AND NOT ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY SELLER. BUYER FURTHER ACKNOWLEDGES AND AGREES THAT ANY INFORMATION PROVIDED OR TO BE PROVIDED WITH RESPECT TO THE PROPERTY WAS OBTAINED FROM A VARIETY OF SOURCES AND THAT SELLER HAS NOT MADE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION AND MAKES NO REPRESENTATIONS AS TO THE ACCURACY OR COMPLETENESS OF SUCH INFORMATION. BUYER SHALL PERFORM AND RELY SOLELY UPON ITS OWN INVESTIGATION CONCERNING ITS INTENDED USE OF THE PROPERTY, THE PROPERTY'S FITNESS THEREFORE, AND THE AVAILABILITY OF SUCH INTENDED

USE UNDER APPLICABLE STATUTES, ORDINANCES, AND REGULATIONS. BUYER FURTHER ACKNOWLEDGES AND AGREES THAT SELLER'S COOPERATION WITH BUYER IN CONNECTION WITH BUYER'S DUE DILIGENCE REVIEW OF THE PROPERTY, WHETHER BY PROVIDING THE TITLE REPORT, OR PERMITTING INSPECTION AND TESTING OF THE PROPERTY, SHALL NOT BE CONSTRUED AS ANY WARRANTY OR REPRESENTATION BY SELLER, EXPRESS OR IMPLIED, OF ANY KIND WITH RESPECT TO THE PROPERTY, OR WITH RESPECT TO THE ACCURACY, COMPLETENESS, OR RELEVANCE OF ANY SUCH DOCUMENTS.

_____          _____
BUYER'S INITIALS                SELLER'S INITIALS

**Section 3. Release.**

From and after the Closing Buyer hereby waives, releases and forever discharges Seller and Seller's officers, directors, shareholders, agents, representatives, attorneys, receivers, trustees and employees, to the maximum extent permitted by law, of and from all damages, actions, causes of action, demands, rights, liabilities, losses, costs, expenses and claims of any nature whatsoever, direct or indirect, known or unknown, foreseen or unforeseen, that may now exist or may arise in the future, relating to or arising from or in any way connected with this Agreement and the Property. Buyer hereby unconditionally and forever waives the rights and benefits afforded by Section 1542 of the California Civil Code, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

**ARTICLE IV**

**TITLE**

**Section 4. Title.**

(a)    At the Closing, Seller shall convey title to the Property to Buyer by standard California grant deed in the form of <u>Exhibit A</u> attached hereto (the "Deed") subject to all encumbrances including the following:

(1) Matters created by or with the written consent of Buyer;

(2) Liens for real estate taxes and assessments;

(3) All monetary liens including deeds of trust and mortgages; and

(4) All easements, covenants, conditions, restrictions and other non-monetary encumbrances of record.

PROPERTY'S FITNESS THEREFORE, AND THE AVAILABILITY OF SUCH INTENDED USE UNDER APPLICABLE STATUTES, ORDINANCES, AND REGULATIONS. BUYER FURTHER ACKNOWLEDGES AND AGREES THAT SELLER'S COOPERATION WITH BUYER IN CONNECTION WITH BUYER'S DUE DILIGENCE REVIEW OF THE PROPERTY, WHETHER BY PROVIDING THE TITLE REPORT, OR PERMITTING INSPECTION AND TESTING OF THE PROPERTY, SHALL NOT BE CONSTRUED AS ANY WARRANTY OR REPRESENTATION BY SELLER, EXPRESS OR IMPLIED, OF ANY KIND WITH RESPECT TO THE PROPERTY, OR WITH RESPECT TO THE ACCURACY, COMPLETENESS, OR RELEVANCE OF ANY SUCH DOCUMENTS.

_____          _____
**BUYER'S INITIALS**                      **SELLER'S INITIALS**

**Section 3.5    Release.**

From and after the Closing Buyer hereby waives, releases and forever discharges Seller and Seller's officers, directors, shareholders, agents, representatives, attorneys, receivers, trustees and employees, to the maximum extent permitted by law, of and from all damages, actions, causes of action, demands, rights, liabilities, losses, costs, expenses and claims of any nature whatsoever, direct or indirect, known or unknown, foreseen or unforeseen, that may now exist or may arise in the future, relating to or arising from or in any way connected with this Agreement and the Property. Buyer hereby unconditionally and forever waives the rights and benefits afforded by Section 1542 of the California Civil Code, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

**ARTICLE IV**

**TITLE**

**Section 4.1    Title.**

(a)    At the Closing, Seller shall convey title to the Property to Buyer by standard California grant deed in the form of **Exhibit A** attached hereto (the "**Deed**") subject to all encumbrances including the following:

(1)    Matters created by or with the written consent of Buyer;

(2)    Liens for real estate taxes and assessments;

(3)    All monetary liens including deeds of trust and mortgages; and

(4)    All easements, covenants, conditions, restrictions and other non-monetary encumbrances of record.

All of the foregoing exceptions shall be referred to collectively as the "**Conditions of Title.**" Subject to the terms and conditions contained elsewhere in this Agreement, by acceptance of the Deed and the Closing of the purchase and sale of the Property, (x) Buyer agrees it is assuming for the benefit of Seller all of the obligations of Seller with respect to the Conditions of Title from and after the Closing, and (y) Buyer agrees that Seller shall have conclusively satisfied its obligations with respect to title to the Property and all other obligations of Seller under this Agreement. The provisions of this Section shall survive the Closing.

## ARTICLE V

### RISK OF LOSS AND INSURANCE PROCEEDS

Section 5.1    Damage, Destruction, and Condemnation.

If the improvements on the Property are destroyed or materially damaged or if condemnation proceedings are commenced against the Property between the date of this Agreement and the Closing, Buyer may terminate this Agreement. If Buyer, however, elects to accept the Property, all proceeds of insurance or condemnation awards payable to Seller by reason of the destruction, damage, or condemnation shall be paid or assigned to Buyer. If Buyer elects to terminate this Agreement pursuant to this Section, Seller shall immediately return the Deposit, together with all accrued interest, to Buyer and neither party shall have any further rights or obligations under this Agreement except as provided in Sections 6.1 and 9.3 below.

## ARTICLE VI

### BROKERS AND EXPENSES

### Section 6.1 Brokers.

The parties represent and warrant to each other that no broker or finder was instrumental in arranging or bringing about this transaction. If any other person brings a claim for a commission or finder's fee based upon any contact, dealings or communication with Buyer or Seller, then the party through whom such person makes his claim shall defend the other party (the "**Indemnified Party**") from such claim, and shall indemnify the Indemnified Party and hold the Indemnified Party harmless from any and all costs, damages, claims, liabilities or expenses (including without limitation, court costs and reasonable attorneys' fees and disbursements) incurred by the Indemnified Party in defending against the claim. The provisions of this Section 6.1 shall survive the Closing or, if the purchase and sale is not consummated, any termination of this Agreement.

### Section 6.2 Expenses.

Except as expressly provided in this section and otherwise in this Agreement, all expenses of this transaction shall be paid by Buyer.

## ARTICLE VII

### AGREEMENTS

EXH B PG 25

**Section 7. Buyer's Approval of Agreements Affecting the Property.**
Between the Effective Date and the Closing, Seller shall not enter into any new agreement affecting the Property, or modify or terminate any agreement affecting the Property, which will be binding on the Property after Closing, except which are terminable on no more than thirty (30) days' notice without payment of any penalty or fee or other cost to Seller or Buyer, without first obtaining Buyer's approval of the proposed action, which approval will not be unreasonably withheld, conditioned or delayed. In such case, Buyer shall specify in detail the reasons for its disapproval of any such proposed action. If Buyer fails to give Seller notice of its approval or disapproval of any such proposed action requiring its approval under this Section 7.1 within three (3) business days after Seller notifies Buyer in writing of Seller's desire to take such action, then Buyer shall be deemed to have given its approval. Buyer agrees to cooperate with Seller in enabling Seller to complete any such proposed transaction requiring Buyer's approval.

## ARTICLE VIII

### CLOSING AND ESCROW

**Section 8. Closing.**

Seller shall file a motion with the Court seeking entry of the Approval Order within five (5) business days after the Effective Date (as defined in Section 9.12 below). The Closing hereunder shall be held and delivery of all items to be made at the Closing under the terms of this Agreement shall be made at the offices of the Seller or as otherwise mutually agreed on or before the fifteenth (15th) day after the date of entry of the Approval Order (the "**Closing Date**"). The obligations of the parties hereunder to consummate the transaction contemplated by this Agreement are contingent on entry of the Approval Order.

**Section 8.2 Deposit of Documents.**

( a )    **At the Closing Date, Seller shall deliver to Buyer:**

( 1 ) **the duly executed and acknowledged Deed in the form attached hereto as <u>Exhibit B</u> conveying the Real Property to Buyer subject to the Conditions of Title;**

( 2 ) **an affidavit pursuant to Section 1445(b)(2) of the Code, and on which Buyer is entitled to rely, that Seller is not a "foreign person" within the meaning of Section 1445(f)(3) of the Code; and**

( 3 ) **a California non-foreign Certificate.**

( b )    **At Closing, Buyer shall deliver to Seller:**

( 1 ) **immediately available funds necessary to close this transaction, including, without limitation, the balance of the Purchase Price and funds sufficient to pay Buyer's closing costs.**

Section 8. Costs and Expenses.

(a)    Buyer shall accept title to the Property subject to all real property taxes and assessments; water, sewer and utility charges; amounts payable under any Service Contracts or other agreements or documents; annual permits and/or inspection fees (calculated on the basis of the period covered); and any other expenses of the operation and maintenance of the Property.

(b)    Buyer shall pay the cost of any Title Report and Title Policy and all transfer taxes applicable to the transfer of the Property. All other expenses of the sale shall be paid by Buyer.

## ARTICLE IX

## MISCELLANEOUS

Section 9. Notices.

Any notices required or permitted to be given hereunder shall be given in writing and shall be delivered (a) in person, (b) by certified mail, postage prepaid, return receipt requested, (c) by facsimile with confirmation of receipt, or (d) by a commercial overnight courier that guarantees next day delivery and provides a receipt, and such notices shall be addressed as follows:

To Buyer:

Arcadia Land Corp, LLC
Attn: Andy Chang
130 W. Huntington Drive
Arcadia, CA 91007
Telephone: (626) 358-9888
Telecopier: (626) 358-9800

with a copy to:

Thomas M. Geher
Jeffer Mangels Butler & Mitchell
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067
Attention:
Telephone: (310) 203-8080
Telecopier: (310) 203-0567

To Seller:

Heide Kurtz, Chapter 7 Trustee
2515 S. Western Ave., Suite 11
San Pedro, CA 90732
Attn:

4830-7251-4311.1 4848-1916-8263.1 848-1916-8263.1

1 1

EXH___B___ PG___27

Telephone: (310) 832-3604
Telecopier: (310) 832-0838

with a copy to:        Annie Verdries, Esq.
Lewis Brisbois Bisgaard & Smith LLP
650 Town Center Drive, Suite 1400
Costa Mesa, CA 92626
TelepPhone: (714) 545-9200
Telecopier: (714) 850-1030

or to such other address as either party may from time to time specify in writing to the other party. Any notice or other communication sent as hereinabove provided shall be deemed effectively given (a) on the date of delivery, if delivered in person; (b) on the date mailed if sent by certified mail, postage prepaid, return receipt requested or by a commercial overnight courier; or (c) on the date of transmission, if sent by facsimile with confirmation of receipt. Such notices shall be deemed received (a) on the date of delivery, if delivered by hand or overnight express delivery service; (b) on the date indicated on the return receipt if mailed; or (c) on the date of transmission, if sent by facsimile. If any notice mailed is properly addressed but returned for any reason, such notice shall be deemed to be effective notice and to be given on the date of mailing. Any notice send by the attorney representing a party, shall qualify as notice under this Agreement.

### Section 9.2 Entire Agreement.

This Agreement, together with the Exhibits hereto, contains all representations, warranties and covenants made by Buyer and Seller and constitutes the entire agreement between the parties hereto with respect to the subject matter hereof, and supersedes any prior correspondence, understandings, representations, memoranda or agreements.

### Section 9.3 Indemnity.

Notwithstanding anything to the contrary contained herein, and except for the purposes of making inquires regarding zoning and land use issues and the existence of current permits necessary to occupy and operate the Property, and except for an investigation of the public records for title inquires and inquires regarding lawsuits and pending governmental actions affecting the Property, Buyer shall not contact any governmental authority without first obtaining the prior written consent of Seller thereto in Seller's sole discretion, unless otherwise required by law, and Seller, at Seller's election, shall be entitled to have a representative participate in any telephone or other contact made by Buyer to a governmental authority and present at any meeting by Buyer with a governmental authority. Buyer shall indemnify and hold Seller harmless from and against any costs, damages, liabilities, losses, expenses, liens or claims (including, without limitation, court costs and reasonable attorneys' fees and disbursements) proximately caused by Buyer, its agents, employees or contractors in the course of performing inspections, testings or inquiries provided for in this Agreement; provided that Buyer shall not be liable to Seller solely as a result of the discovery by Buyer of a pre-existing condition on the Property. The foregoing indemnity shall survive the Closing or, if the sale is not consummated, beyond the termination of this Agreement.

### Section 9.4 Time.

Time is of the essence in the performance of each of the parties' respective obligations contained herein.

### Section 9.5 Attorneys' Fees.

If either party hereto fails to perform any of its obligations under this Agreement or if any dispute arises between the parties hereto concerning the meaning or interpretation of any provision of this Agreement, whether prior to or after Closing, then the defaulting party or the party not prevailing in such dispute, as the case may be, shall pay any and all costs and expenses incurred by the other party on account of such default and/or in enforcing or establishing its rights hereunder, including, without limitation, court costs and reasonable attorneys' fees and disbursements.

### Section 9.6 Assignment.

Buyer's rights and obligations hereunder shall not be assignable without the prior written consent of Seller, which consent may be given or withheld in Seller's sole and absolute discretion. Subject to the provisions of this Section, this Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and assigns.

### Section 9.7 Counterparts.

This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

### Section 9.8 Governing Law.

This Agreement shall be governed by and construed in accordance with the laws of the State of California.

### Section 9.9 Interpretation of Agreement.

The article, section and other headings of this Agreement are for convenience of reference only and shall not be construed to affect the meaning of any provision contained herein. Where the context so requires, the use of the singular shall include the plural and vice versa and the use of the masculine shall include the feminine and the neuter. The term "**person**" shall include any individual, partnership, joint venture, corporation, trust, unincorporated association, any other entity and any government or any department or agency thereof, whether acting in an individual, fiduciary or other capacity.

### Section 9.10 Amendments.

This Agreement may be amended or modified only by a written instrument signed by Buyer and Seller.

### Section 9.11 No Recording.

Neither this Agreement or any memorandum or short form thereof may be recorded by Buyer.

EXH___*B*___ PG___*29*___

**Section 9.11** **Drafts Not an Offer to Enter Into a Legally Binding Contract.**

The parties hereto agree that the submission of a draft of this Agreement by one party to another is not intended by either party to be an offer to enter into a legally binding contract with respect to the purchase and sale of the Property. The parties shall be legally bound with respect to the purchase and sale of the Property pursuant to the terms of this Agreement only if and when the parties have executed and delivered to each other a counterpart of this Agreement (or a copy by facsimile transmission). Notwithstanding the foregoing, Buyer acknowledges and agrees that any execution and delivery of this Agreement by Seller prior to entry of the Approval Order shall be contingent on entry of the Approval Order.

**Section 9.12** **No Partnership.**

The relationship of the parties hereto is solely that of Seller and Buyer with respect to the Property and no joint venture or other partnership exists between the parties hereto. Neither party has any fiduciary relationship hereunder to the other.

**Section 9.13** **No Third Party Beneficiary.**

The provisions of this Agreement are not intended to benefit any third parties.

**Section 9.14** **Automatic Termination.**

Buyer and Seller hereby acknowledge and agree that if the Court denies Seller's motion requesting entry of the Approval Order or if the Approval Order is not entered by the Deadline, then thereupon this Agreement shall automatically terminate and the Deposit shall be refunded to Buyer by the Seller or holder thereof, whereupon neither party shall have any further rights or obligations under this Agreement except as provided in Section 6.1 and 9.3 above.

**Section 9.15** **Indemnity.**

Buyer shall, from and after the Closing, indemnify, defend, and hold Seller and its agents, directors, officers, shareholders, employees, affiliated companies and entities, attorneys, heirs, beneficiaries, successors, and assigns (collectively, "Seller Parties") harmless from and against any and all costs, demands, damages, claims, expenses, losses, actions, causes of action, liabilities, agency directives, orders, penalties, investigation, identification, removal, remediation, disposal, transportation, and monitoring costs or other problems or expenses of any kind (collectively, "Claims") in any way relating to the Property and/or the ownership, development, improvement, marketing, or sale thereof, whether direct or indirect, known or unknown, or foreseen or unforeseen, which arise on or after the Closing. The obligations of Buyer under this Section 9.16 shall include the indemnification and protection of Seller and Seller Parties from any attorneys' fees and costs and experts' fees and costs which may be incurred in connection with any such Claims. Buyer shall defend Seller and Seller Parties from such Claims through legal counsel and experts reasonably satisfactory to Seller.

The parties hereto have executed this Agreement as of the date set forth in the first paragraph of this Agreement.

development, improvement, marketing, or sale thereof, whether direct or indirect, known or unknown, or foreseen or unforeseen, which arise on or after the Closing. The obligations of Buyer under this Section 9.16 shall include the indemnification and protection of Seller and Seller Parties from any attorneys' fees and costs and experts' fees and costs which may be incurred in connection with any such Claims. Buyer shall defend Seller and Seller Parties from such Claims through legal counsel and experts reasonably satisfactory to Seller.

The parties hereto have executed this Agreement as of the date set forth in the first paragraph of this Agreement.

**Seller:**                    Heide Kurtz, acting solely in her capacity
                               as the duly appointed Chapter 7 Trustee
                               in In re Ronald O. Escobar,
                               Case No. 2:09:BK-19225-SB ·

**Buyer:**

Arcadia Land Corp., LLC,

a California Limited Liability Company
By:    _____
       Andy Camto, Manager

EXH__ *B* __PG__ *31*

*Seller:*    Heide Kurtz, acting solely in her capacity
as the duly appointed Chapter 7 Trustee
in In re Ronald O. Escobar,
Case No. 2:09:BK-19225-SB

*Buyer:*    Arcadia Land Corp., LLC,
a California Limited Liability Company

By: _____
Andy Changarate, Manager

## EXHIBIT A

## DEED

EXH. B    PG. 33

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

GRANT DEED

Assessor's Parcel Number:

      In accordance with Section 11932 of the California Revenue and Taxation Code, Grantor (as defined below) has declared the amount of transfer tax which is due by a separate statement which is not being recorded with this Grant Deed.

      FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, Heide Kurtz, acting solely in her capacity as the duly appointed Chapter 7 Trustee in In re Ronald O. Escobar, Debtor, in the United States Bankruptcy Court for the Central District of California, Case No. 2:09:BK-19225-SB ("Grantor"), hereby grants to
, a                      ("Grantee"), the real property located at 9632 S. Western Avenue, in the City of Los Angeles, County of Los Angeles, State of California, as more particularly described in Exhibit A attached hereto and incorporated herein, together with all improvements thereon (the "Property"). The Property is hereby conveyed on an "AS IS-WHERE IS-WITH ALL FAULTS" basis without warranty.

Dated: _____, 2010

                           _____
                           HEIDE KURTZ, acting solely in her
                           capacity as the duly appointed
                           Chapter 7 Trustee in In re Ronald O.
          Escobar, Debtor, in the United States
          Bankruptcy Court for the Central District   of
          California, Case No. 2:09:BK-19225-SB

MAIL TAX STATEMENTS AS SET FORTH ABOVE

4830-7251-4311.14848-1916-8263.1848-1916-8263.1

EXH ___B___ PG ___34___

EXHIBIT "A"

TO

GRANT DEED

(Legal description attached hereto)

EXH_____PG_____

| In re: RONALD O. ESCOBAR | CHAPTER: 7 |
|---|---|
| Debtor(s). | CASE NUMBER: 2:09BK-19225-PC |

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 650 Town Center Drive, Suite 1400, Costa Mesa, CA 92626

A true and correct copy of the foregoing document described as <u>MOTION FOR ORDER AUTHORIZING CHAPTER 7 TRUSTEE TO 1)SELL ESTATE PROP.; 2) FINDING PURCHASERS; 3) ORDER; MEMO OF P&AS; KURTZ AND CHANG DECLARATIONS</u>  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On SEPTEMBER 22, 2010     I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

Steven L Bryson    slblaw1@aol.com, ecf.SLB@gmail.com ; Adlore V Clarambeau    atty4u2c2002@yahoo.com; Thomas M Geher    tmg@jmbm.com
Sheri Kanesaka    sheri.kanesaka@bryancave.com; Heide Kurtz (TR)    trustee@hkurtzco.com, ca45@ecfcbis.com; Keith C Owens    kowens@foley.com; Richard J
Reynolds    glatimer@trlawyers.com; Meghan C Sherrill    meghan.sherrill@bryancave.com; Michael C Smith    michaelcsmith@mindspring.com, cmecf@cd-
attorneys.com; Katherine P Soby    ksoby@foley.com; United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov; Katherine M Windler    katherine.windler@bryancave

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On SEPTEMBER 22, 2010     I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.
Please see attached mailing list.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 22, 2010 | GLORIA C. PONCE | _Signature_ |
|---|---|---|
| _Date_ | _Type Name_ | _Signature_ |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                    **F 9013-3.1**

F901331

## In re RONALD O. ESCOBAR
### Case No.: 2:09-19225

| | |
|---|---|
| Benjamin Donel<br>6003 Compton Ave.<br>Los Angeles, CA 90001 | Bita Goodman<br>6003 Compton Ave.<br>Los Angeles, CA 90001 |
| Ronald O. Escobar<br>4925 Berryman Avenue<br>Culver City, CA 90230 | American Express<br>c/o Becket and Lee<br>P.O. Box 3001<br>Malvern, PA 19355 |
| Bank of America<br>Attn: Bankruptcy NC4-105-02-77<br>P.O. Box 26012<br>Greensboro, NC 27410 | California Credit Union<br>701 N. Brand Blvd.<br>Glendale, CA 91203 |
| Citi<br>Attn: Centralized Bankruptcy<br>P.O. Box 20507<br>Kansas City, MO 64915 | Sears/cbsd<br>Sears Bankruptcy Recovery<br>7920 Nw 110th Street<br>Kansas City, MO 64101 |
| Corporate Collection Services<br>P.O. Box 1500<br>Henrietta, NY 14467-1500 | Countrywide Home Lending<br>Attn: Bankruptcy SV-314B<br>P.O. Box 5170<br>Simi Valley, CA 93062 |
| GMAC<br>3451 Hammond Avenue<br>Waterloo, UA 50702 | WESCOM Credit Union<br>Attn: Bankruptcy Dept.<br>P.O. Box 7058<br>Pasadena, CA 91109-7058 |
| ER Solutions<br>P.O. Box 9004<br>Renton, WA 98057 | GMAC<br>P.O. Box 2159<br>Greeley, CO 80632 |

| | |
|---|---|
| Marina Piazza LLC<br>c/o Barry S. Parker, Esq.<br>10880 Wilshire Blvd, #1050<br>Los Angeles, CA 90024 | MSB<br>P.O. Box 16755<br>Austin, TX 78761-6755 |
| Sallie Mae<br>Attn: Claims Dept.<br>P.O. Box 9500<br>Wilkes Barre, PA 18773 | USGI, Inc.<br>9375 Chesapeak St., Ste. 215<br>La Plata, MD 20646 |
| Washington Mutual<br>Attn: Bankruptcy<br>P.O. Box 4180<br>Beaverton, OR 97076 | Washington Mutual Mortgage<br>Attn: Bankruptcy Dept. JAXA 2035<br>7255 Bay Meadows Way<br>Jacksonville, FL 32256 |
| Water & Power Comm. Cu<br>1053 W. Sunset Blvd.<br>Los Angeles, CA 90012 | Wells Fargo<br>Attn: Bankruptcy Dept.<br>P.O. Box 54349<br>Los Angeles, CA 90054-0349 |
| Wells Fargo Bank<br>P.O. Box 5445<br>Portland, OR 97208 | Franchise Tax Board<br>P.O. Box 942807<br>Sacramento, CA 94267 |
| Bank of America<br>Attn: Bankruptcy NC4-105-02-99<br>P.O. Box 26012<br>Greensboro, CA 27410 | Internal Revenue Service<br>Special Procedures<br>300 North Los Angeles Street<br>Los Angeles, CA 90012 |
| Internal Revenue Service<br>P. O. Box 21126<br>Philadelphia, PA 19114 | |